FILED BY _____ D.C.

05 AUG 26 PM 4: 12

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL MORTGAGE, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | No. 99-3061-D |
| ) | |
| **WILLIAM N. GRIFFIN, et al.** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER DENYING DEFENDANTS WILLIAM N. GRIFFIN AND GRIFFIN, CLIFT, EVERTON & THORNTON, PLLC'S MOTION FOR SUMMARY JUDGMENT (Dkt #206)

Before the Court is a motion for summary judgment by William N. Griffin ("Griffin") and Griffin, Clift, Everton & Thornton, PLLC ("Griffin-Clift"), (collectively "Defendants"). For the reasons stated below, the Court **DENIES** Defendants' motion for summary judgment.

### I. FACTUAL BACKGROUND[1]

American National Mortgage, Inc. ("Plaintiff" or "ANM"), a Tennessee real estate mortgage corporation, filed this action on December 3, 1999, alleging that Griffin, a practicing attorney in the state of Tennessee, and Griffin-Clift, a Tennessee law firm, conspired to defraud it through a knowing engagement in a "property-flipping" scheme, whereby real property was bought from a legitimate seller and then sold on the same day or within a short period of time at artificially inflated

---

[1] The facts are taken from Plaintiff's complaint, the deposition of Barney L. Matthew, president of ANM, and the memoranda in support of and in opposition to Plaintiff's motion for summary judgment.

1

This document entered on the docket sheet in compliance
with Rule 58 and /or 79(a) FRCP on _____

prices. All loan financing on the subject properties was provided by ANM. Griffin, acting independently or through Griffin-Clift, was the closing agent for Plaintiff on the real estate closings.

In November 1997, Plaintiff provided first mortgage loans on approximately 139 separate properties in Tennessee in this matter. The alleged property-flipping scheme involved two distinct transactions as to each of the 139 properties, whereby the property was bought from a bonafide seller at fair market value by one of the buyers ("Transaction 1"). On the same day, or in close proximity in time, a second transaction ("Transaction 2") occurred pursuant to the same property at a price inflated through the use of an alleged false or inflated appraisal valuation submitted by Defendant Ann Baker d/b/a Ann Baker & Associates. Barney Mathews, ANM's president, stated in his deposition that many of these mortgages were bundled and sold to sub-prime investors.

ANM asserts that the HUD-1 Settlement Statements, prepared by Griffin and sent to Plaintiff for the closing of each loan, contained false or fraudulent information. Plaintiff further alleges that Griffin knew that the HUD-1 Settlement Statements were false and made these statements for the purpose of inducing Plaintiff to fund and close the corresponding loans. Additionally, Plaintiff claims that the Title Commitments, prepared by Defendant, Security Title Company, Inc. ("Security") and issued by Griffin, were also used to conceal from Plaintiff the fact that each of the subject properties had been closed twice within a short period of time, and that the property sold for a significantly higher price the second time. Plaintiff claims that the property-flipping scheme left it severely under-collateralized for all of the loans it issued for these properties and that it has lost the ability to do business, warehouse lines of credit, and that some of its lenders and investors have demanded repurchase of the subject loans.

2

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. In other words, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. As such, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

ANM alleges that the Defendants violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, et seq., with claims that the Defendants committed the predicate

3

acts of mail fraud (18 U.S.C. § 1341), fraud by wire, radio, or television (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), money laundering (18 U.S.C. § 1956), and engaging in a monetary transaction in property derived from specific unlawful activity (18 U.S.C. § 1957). Further, ANM claims that Defendants conspired in violation of 18 U.S.C. § 1962(d) and committed fraud, conversion, negligent misrepresentation, and breach of fiduciary duty in violation of the common law of Tennessee. The Court has jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964, with resulting supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## A. RICO, Conspiracy, and Fraud

Defendants assert that Plaintiff's RICO cause of action under § 1962(c) should be dismissed because the predicate offenses Plaintiff's assert involve fraud and Plaintiff's actual knowledge precludes it from any recovery based on fraud. Plaintiff argues that Defendants' summary judgment motion is premature because it was filed eight months before the December 15, 2005 discovery deadline and, as a result, Plaintiff has not had a full opportunity to conduct discovery in this matter.

Section 1964(c) allows for civil enforcement of RICO's provisions:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in an appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Section 18 U.S.C. § 1962(d) provides in pertinent part that it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. To plead a violation of § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). "Racketeering activity" is the commission of specific predicate acts for which a defendant could be

4

convicted. Id. at 488. A "pattern of racketeering activity" requires at least two such acts. 18 U.S.C. § 1961(5). The Sixth Circuit has defined a RICO enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). See Beard v. Worldwide Mortgage Corp., 354 F.Supp.2d 789, 798 (W.D. Tenn. 2005) (citing VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000)); Advocacy Org. for Patients and Providers v. Auto Club Ins. Assoc., 176 F.3d 315, 322 (6th Cir. 1999). Any predicate act which requires an allegation of fraudulent conduct must meet Fed.R.Civ.P. 9(b)'s particularity requirement.

Defendants cite Coffey v. Foamer L.P., 2 F.3d 157 (6th Cir. 1993), to address Plaintiff's § 1962 (c) claim and its predicate acts. In Coffey, workers and wives brought a Tennessee common law action against employers for fraudulent misrepresentation upon workers by failing to warn them of dangers. The Coffey Court held that a plaintiff could not recover in an action based on fraud regarding any matter of which he or she had actual knowledge because there is no deception. See Coffey, 2 f.3d at 162 (citing Pusser v. Gordon, 684 S.W.2d 639, 641 (Tenn. Ct. App. 1984)). On a motion to dismiss, the Coffey Court held that the complaint was vague as to which specific acts or omissions of the defendants amounted to fraudulent misrepresentation. Coffey, 2 F.3d at 162 (the allegation that "defendants . . . actively practiced fraud upon the plaintiffs" is purely conclusory).

Defendants' argument fails because its reliance on Coffey is misplaced. Coffey was concerned with supplemental jurisdiction over a Tennessee common law fraud claim, not a federal RICO claim. Congress has clearly articulated the standard required to mount a RICO claim. This Court declines to impose state common law principals of fraud into a RICO analysis. Accordingly, Defendants motion for summary judgment as to the claims under RICO are **DENIED**.

The Court will consider Coffey, however, in Defendants' challenge to the fraud and conspiracy claims. The Coffey case can be distinguished from the case at bar because this Court

5

is availed a wider scope of material to consider in testing the veracity of Plaintiff's claim pursuant to a motion for summary judgment, as opposed to the motion to dismiss before the Coffey Court. Substantively, Defendants argue that Plaintiff had access to documents that provided them with actual knowledge regarding the multiple sale transactions on the subject properties. The Coffey Court stated that both "specific acts or *omissions*" are considered against claims predicated on fraudulent intent. Id. (emphasis added). Defendants argue that none of the information contained in the closing documents for the subject transactions were untrue. This does not, however, address whether Defendants omitted information that it would have had a duty to submit to Plaintiff pursuant to its fiduciary duty. This Court finds that Defendants' motion for summary judgment as to Plaintiff's conspiracy and fraud claims is unsupported because a genuine issue of material fact exists as to whether Plaintiff had actual knowledge of the property-flipping scheme and whether Defendants omitted information it had a duty to provide Plaintiff. Accordingly, Defendants motion for summary judgment as to these conspiracy and fraud are **DENIED**.

## B. Tennessee Common Law Claims

### 1. Breach of Fiduciary Duty

Defendants assert that the record does not support Plaintiff's allegation that they breached their fiduciary duty because Defendants performed their duties in accordance with Plaintiff's requests and Plaintiff had knowledge of the transactions. Plaintiff alleges that Griffin, and/or Griffin-Clift, were agents of Plaintiff during the relevant period and that Defendants breached their fiduciary duties by not disclosing the existence of the property-flipping scheme, which Plaintiff asserts was the proximate cause of the damages it has allegedly suffered.

The Tennessee Supreme Court in Jenkins Insurance provided that:

> "An agent is a fiduciary with respect to the matters within the scope of his agency. The very relationship implies that the principal has reposed some trust or confidence in the agent and the agent or employee is bound to the exercise of the utmost faith, loyalty, and honesty toward his principal or employer."

6

Knox-Tenn Rental Co. v. Jenkins Ins., Inc., 755 S.W.2d 33, 36 (Tenn.1988) (citing 3 Am.Jur.2d Agency, § 210, p. 713). See also Alexander v. Inman, 974 S.W.2d 689, 693-94 (Tenn. 1998) (internal quotations and citations omitted).

Griffin and/or Griffin-Clift served as the closing agent for each loan closing transaction. The fiduciary relationship between attorney and client is well established. Plaintiff alleges that Defendants' fiduciary duty obligated them to advise it of the alleged property-flipping scheme. In Tennessee, a party's failure to inform another, where there is a duty to do so based on a fiduciary role, may lead to a cause of action for breach of fiduciary duty. See Faught v. Estate of Emma Corine Faught, 730 S.W.2d 323, 327 (1987).

Defendants rely on the fact that Plaintiff reviewed and approved each HUD-1 Settlement Statement as a condition of closing each loan. In addition, Defendants point to the Supplemental Closing Instructions where Plaintiff required Griffin to comply with an enumerated list of tasks that had to be completed in order for any loan to close. As Plaintiff's fiduciary, Defendants owed Plaintiff the utmost good faith in their dealings. In substance, Defendants argue that they should not be held to have a disclosure duty, only a duty to conform with the closing document forms and the enumerated task list provided by the client. The Court rejects this argument. In Faught, the Court held that a fiduciary's role required co-executors to disclose all material facts within their knowledge to each other, including values on all estate properties, before any co-executor executes a waiver document relinquishing an interest. Faught, 730 S.W.2d at 326. Like the Faught defendants, in the case at bar, Defendants were fiduciaries who had a duty to disclose in good faith, information as to the transactions at issue and their potential legal ramifications to Plaintiff. As stated previously, the Court finds that there is a genuine issue of material fact as to whether Plaintiff had actual knowledge. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's claim for breach of fiduciary duty.

2. **Negligent Misrepresentation**

Defendants argue that Plaintiff's claim for negligent misrepresentation should be dismissed because Defendants never supplied Plaintiff with faulty information. Plaintiff asserts that Defendants' omission of material information, namely, the existence of the property-flipping scheme, constituted negligent misrepresentation.

Tennessee has adopted the definition of negligent misrepresentation that appears in section 552 of the Restatement (Second) of Torts. Robinson v. Omer, 952 S.W.2d 423, 427 (Tenn. 1997). Pursuant to this definition, even when there is no contractual privity between the plaintiff and the defendant, the plaintiff can recover by establishing that:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
> (4) the Plaintiff justifiably relies upon the information.

Id. (internal quotations omitted).

Defendants challenge prong two and assert that no faulty information was provided because all the information supplied was true. In order to carry out the alleged property-flipping scheme, it is asserted that the HUD-1s represented sellers in Transaction 2 who did not yet have vested title to the property at issue. See Depo. of Matthew. 140, 18-20. A competent closing attorney would not close on property from a seller who does not in fact own the property. Additionally, if Plaintiff did not have knowledge of the property-flipping scheme and Defendants did, Defendants' failure to disclose would constitute faulty information pursuant to its fiduciary duty to disclose. A genuine issue of material fact exists as to whether faulty information was supplied, affirmatively or by

8

omission. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to the negligent misrepresentation claim.

### 3. Conversion

Defendants argue that Plaintiff's claim for conversion should be dismissed because Defendants never appropriated funds or fees that belonged to Plaintiff, but only received loan proceeds due it pursuant to its contractual fee arrangement as the closing attorney on these transactions. Plaintiff asserts that Defendants are liable for conversion because from on or about November 26, 1997, to the present, Defendants unlawfully took and converted for its on use loan proceeds on the subject properties.

To establish a claim for conversion under Tennessee law, a plaintiff must show that the defendant has "1) appropriated something belonging to the Plaintiff to its own use and benefit, 2) by the exercise of dominion over it, 3) in defiance of the Plaintiff's right." Mammoth Cave Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (internal quotations and citations omitted). Ordinarily, conversion can be maintained only if the party can show possession or right to immediate possession of items converted at the time of the alleged conversion. Id. The measure of damages in a conversion action is the value of the property withheld by the defendant at the time of the conversion. Barger v. Webb, 391 S.W.2d 664 (Tenn. 1965).

Assuming that the facts as alleged by Plaintiff are true, the excessive fees collected by Defendants from the loans provided by Plaintiff in Transaction 2 constitutes assets belonging to Plaintiff to which Defendants exercised dominion in defiance of the Plaintiff's right upon collecting the allegedly excessive fees. Accordingly, the Court **DENIES** Defendants' motion for summary judgment as to the conversion claim.

9

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendants' motion for summary judgment as to all of Plaintiff's claims.

**IT IS SO ORDERED** this _25th_ day of _August_ 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 219 in case 2:99-CV-03061 was distributed by fax, mail, or direct printing on September 6, 2005 to the parties listed.

---

Carroll L. Andre
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Shea Sisk Wellford
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Tim Edwards
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Howard Brett Manis
BOROD & KRAMER
80 Monroe Ave.
Ste. G-1
Memphis, TN 38103

Bruce S. Kramer
BOROD & KRAMER
80 Monroe Ave.
Ste. G-1
Memphis, TN 38103

Dale H. Tuttle
GLASSMAN JETER EDWARD & WADE
26 N. Second Street
Memphis, TN 38103

W. Emmett Marston
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Marcus D. Ward
THE WHARTON FIRM
147 Jefferson Avenue
Ste. 1205
Memphis, TN 38103

Michael G. McLaren
BLACK MCLAREN JONES & RYLAND
530 Oak Court Dr.
Ste. 310
Memphis, TN 38117

William T. Clabault
UNITED STATES DEPARTMENT OF JUSTICE
1400 New York Ave., N.W.
Ste. 4000
Washington, DC 20005

Henry L. Klein
APPERSON CRUMP & MAXWELL, PLC
6000 Poplar Ave.
Ste. 400
Memphis, TN 38119--397

Richard M. Carter
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Honorable Bernice Donald
US DISTRICT COURT